Our last case for argument is 24-1231, Barrette Outdoor Living v. Fortress. Is it Marindola? Yes, Your Honor. Mr. Marindola, please proceed. Good morning, Your Honors. May it please the Court. Tyler Marindola for the appellant, Barrette Outdoor Living. The issue in the principal appeal is whether the district court erred when it held that Barrette disclaimed the non-integral bosses as part of the patents in suit. The patents in suit concern... Let's just jump right to the issue. Let's look at appendix page 499 and 500 because that's where it looks like the disclaimer to place to. So I'm just going to take you right there and say, why is that not disclaimer? The claimed integral boss. So two reasons, Your Honor. The first is the feature that Barrette is trying to distinguish over here is not in fact a non-integral boss at all. What the examiner cites at appendix 30... It doesn't matter. Our disclaimer law says it's what somebody would think you're explaining your invention is or how they would understand it, not whether you had to give something up to get past it. But if you give up more than you need to or something you didn't even need to, you still gave it up. No question, Your Honor. In cases where an applicant makes an argument, gives up claim scope, and then that claim scope gets allowed, they can argue later on, I didn't need to give up that much. That's not this case. By the way, that's not just what disclaimer is. Disclaimer can be when you don't even give up claim scope. You're just clarifying what you're... Well, I guess it is you are giving up claim scope ultimately. But when you're making it clear that you're not sweeping as broad as the language might otherwise allow. So yeah, I guess it is giving up. And that's not what Barrette was doing here. So if you look at appendix 430, where the examiner cites the SureStat device, the examiner cites boss 150. What boss 150 is, is a pivot hole. Just a hole. That's it. It's an integral feature, and the examiner says, that's what I'm reading on boss. Barrette comes back and says, that's not the claimed integral boss. No dispute about that. The examiner then responds and says, you're right. And to look at what the examiner understood Barrette to be saying, you just need to look at the next office action at page appendix 515. The examiner says, applicant argues the structure recited as a boss 150 in SureStat is not a boss. Examiner agrees. Barrette was, at the very least, a competitor could not read that and say, I understand Barrette to be giving up for all time non-integral bosses. I hear your argument, but if you go back to appendix 499 and to the chief's point, the fact that you may have argued more than you needed to argue doesn't matter. You've given up subject matter. It does matter, Your Honor, when the examiner clearly rejects the disclaimer, rejects the view of the claims that the applicant put forward. Oh, you're not hearing me. It doesn't matter that he disclaimed more than he had to disclaim. Under the court's decisions in the Shire case, the MIT versus Shire, and the Malvern case that we cite in our brief, it does matter because it affects how a competitor or how the public is able to view the file history. When Barrette says, imagine, and I don't conceive this, that Barrette was trying in that office action response to limit boss to an integral feature. Like I said, don't conceive that. But if we imagine that that's the case, then once the examiner says, no, no, your claims are not limited to integral features. They are, in fact, and this is page 515, appendix 515, the examiner meant to refer to the boss 148. And if you look at Shire-SAB, there's two elements. There's 148, which is a pivot pin. And there is 148 prime, which is an integral kind of nub. But Counselor, it doesn't seem like the examiner disagreed the invention was on the integral boss, but instead, just whether or not Shire did contain an integral boss. That's the way I'm seeing 515. I don't think that that reading is consistent with the full file history. The examiner was focused at different times on integral and non-integral features as the boss. And it seems to me that the examiner understood throughout that boss can be integral or, and this is plain as day in the specification, a separate feature like a pivot pin. But are you pointing to the 515 that you point us to, isn't in this particular portion that the examiner is just talking about whether or not Shire-SAB would have an integral boss. Isn't that what the examiner is doing here? So what the examiner is saying about Shire-SAB is Shire-SAB shows both integral and non-integral bosses. And rejecting the claims, again, in this office action response, on the ground that boss is allegedly found in Shire-SAB. The examiner, at least as I read this response, and I think it's important to understand or remember that the legal standard here was is there clear and unmistakable surrender of claims here? I don't understand your argument. You have a response which says we've got, if you grant me this, you've got a response that says we have claimed integral boss and just grant me that means you were limiting your boss to being an integral boss. Just grant me that. I understand you might not love that, but just grant me that. Because that's the way I read 499 and 500. Is you're saying we are only claiming an integral boss. And the examiner comes along and says, after that, well, it doesn't matter that you're only claiming an integral boss. You still haven't overcome Shire-SAB because a boss can be either integral or not integral. And that, I don't think that that actually informs at all or suggests, oh, well, then you could just go back to having a broader boss. You can have one that's integral and not integral. Because you said, no, examiner, I'm only claiming an integral boss. The examiner says, well, that doesn't get you over this reference because the reference is both. The fact that you didn't win with that, this is not like collateral estoppel, where you make an argument and you have to prevail on it for it to later be a problem for you. You made this argument. You didn't do a take back. The examiner said, that argument is not good enough. But you didn't do a take back. You didn't say, oh, nope. Remember we said integral? Nope, not integral anymore. So two things on that, Your Honor. One is from a public perception perspective, it's important, I think, to remember that this office action response, this back and forth, was about a year plus after a couple of patents had already issued with the same type of boss language. And two, the law is that if the examiner rejects the applicant's view and the applicant then distinguishes for another reason, this is the Ecolab case. The Ecolab case was the applicant saying, plain as day, my claims are limited to a single biocide, a single antimicrobial agent. The examiner saying, I don't read it that way. But that's not what the examiner said here. The examiner didn't say, I don't read your claim as limited to integral. The examiner said, it doesn't matter whether your claim is limited to integral because the reference discloses both integral and non-integral. So the examiner never suggested that the way you purport that your claim is limited is not accurate. So the examiner says it at Appendix 506, SureStat teaches a connector 130 comprising at least one side with an elongate strip having a boss 148. The boss is the pivot pin. That's what the examiner is relying on. Or alternatively, 148 prime.  And the examiner is saying that 148 in SureStat is the same as the boss of the claims. Is there anywhere in the prosecution history where the patentee withdraws the view that the invention had a claimed integral boss? Is there someplace you could point me to a page where you suddenly say, I'm just kidding. I didn't mean claim integral boss. Is there something like that? I know you wouldn't use the words just kidding, but do you understand what I'm getting at? I do, Your Honor. And I'll start from the premise that I don't think that's required. OK, but just tell me, did it happen? So the very next office action after the listening. I have one question. Did it happen? Yes, no? Barrett did not say I withdraw this statement. What Barrett did say is I got this office action, said, look, Your Honor, we disagree for various reasons, but we're amending the claims and we're amending them to be like the ones you already allowed. I think it's common ground here that the boss itself was not the distinguishing feature of the claims that the examiner allowed in the 965 and the 332 patents that issued before, or was at least not the sole distinguishing feature. And so at least my reading of that prosecution history is Barrett is saying, I made that argument. This is starting from the premise, Your Honor, that it's a clear statement that the claims are limited to integral, which I think you understand from our blue brief, we don't concede. But starting from that premise, Barrett gave that argument up and said, all right, I'll take the claims that you already allowed, Your Honor, that have the additional limitations about the picket going against the levering the strip in one direction or the other. The problem is that when you say the claim to integral boss, there was an amendment that was made, and that was adding in the language to the claim about bosses in claim one. That same language about bosses almost identically appears in the claims, the same claims that you got rid of these claims, and then you went with your old claims and said, we're going with our old claims. The old claims have the same language with regard to bosses as these claims, which you've characterized as claiming only integral bosses. Here's the problem for me. I'm just going to be honest with you. You're the patentee, and you represent the patentee. You said, I am the claimed integral bosses, and since I construe that as you making it clear to the world that's all you're claiming, you can't point to something squishy after that to get around it, because you are the only people that have the ability to make it clear to the world what your invention is. And you've made it clear in this statement to me, so if you're going to try and do a take-back, you've got to make that take-back really clear. You can't be squishy on the take-back, because you're the only one that has the ability to make this record clear for facetious. And I think, Your Honor, if you look back at the Ecolab case, the Malvern Panalytical case, the MIT versus Shire case, there is not a requirement when you're talking about the clear and unmistakable standard for the applicant to make it clear and unmistakable that it's withdrawing an alleged disclaimer. The distinguishing feature of those cases, the cases that they rely on are all typical disclaimer cases where the applicant makes an argument or makes an amendment that gives up scope, and they get the claim. And then later on, they argue, I gave up more than I needed to. The Ecolab case, the Shire case, the Malvern case, are all situations where it's muddy. And the reason it's muddy is not because the applicant says, I clearly withdraw this argument. It's muddy because the examiner says, I don't agree with your view, and then the applicant says, well, here's a different argument for you. And then the claims issue somewhere down the line. Now, you're into your rebuttal time soon. Do you want to move to the 905 patent? Because I understand there are some differences on that. Is that something you want to move to? There are, Your Honor. So the 905 patent uses different terminology. It uses a projection, and it uses a series of axles. The district court, by that point of its opinion, I think, was so far down the road of the disclaimer that it kind of lumped it all together and really shouldn't have. I just want you to assume, as you're making this 905 argument, I hate to say this, but assume that I don't agree with you on the disclaimer with regard to the other three. So now you've got to convince me why that disclaimer doesn't infect the 905. Sure. So a couple reasons. One is the patent couldn't be clearer that pivot pins, like a series of axles, are covered, and the district court agrees with that. The patents before this had all issued with the... So let me, I guess, step back. A pivot pin is distinct in the specification from a boss. It's an example of a boss, but it is distinct from it. And so when... it's the same examiner all the way through. When Barrett uses a different term, even assuming that it had limited the term boss, then we assume, or we need to presume, that's how patent law works, that the series of axles term was chosen purposefully, and it was chosen because it had a different scope than the term that Barrett allegedly disclaimed. And I think the district court agreed on this. It may even be common ground between my friends and I that series of axles is not amenable, on its ordinary meaning or based on the specification, to an integral restriction. So I don't think there would be any basis for the public to rely on the disclaimer of boss as affecting the different term series of axles. Is there... let me just draw your attention to one thing, which is appendix page 1651, which I think is your own brief. Tell me when you're there. I'm there, Your Honor. So it's right in the middle of the page where the paragraph begins, accordingly? Yes. Barrett urges that a boss, in the context of the patents in suit, is simply a projection or a protrusion. So basically, have you equated those two, boss and projection or protrusion, such that they're interchangeable in whatever the scope of boss is? That's the scope of projection or protrusion? I don't think so. The way that the patent talks about a projection is as broader than a boss. So the specification, I believe, uses the phrase projection e.g. boss. And so there is a distinction in the specification between a projection and a boss. And, of course, series of axles is itself a different term here. I understand that the 905 uses both. And, Your Honor, I don't... I'll say it's in time for rebuttal. Thank you very much. Yep, no problem. Mr. Storm? Good morning. I think it's still morning. And may it please the Court, Paul Storm on behalf of Fortress. All of the time we just spent discussing the disclaimer with respect to integral. There are three other issues here. The Court also held that boss and the related terms are fashionless. And either one of those, the integral term or the fashionless term, is adequate to support the judgment of the Court-interred of non-infringement. Fashionless is not limited to the word bosses in the specification. And the specification is very clear that in addition to having integral bosses as part of the invention, that the connection, that pivoting connection that's on the inside of this fence is fashionless. It's a simple sort of slide-together connection that's described as fast and easy. And on fashionless, that is plenty for us to learn. I think the disclaimer on boss is clear. Happy to address it any more. But I think looking at fashionless in column one, I'm looking at appendix 171. This is the summary of the invention. Connectors, be they shorter individual picket connector or longer multi-picket connector strips, can include small projections, e.g. bosses, that extend from one surface thereof and engage holes, e.g. recesses formed in the pickets. Advantageously, this provides a fashionless but still pivotal connection. That term is repeated in column four, describing the benefit of how easy it is to put this together. Connector is also achieved without the use of any thread or fasteners. That's describing the connection between the connector strip and the picket. But that doesn't necessarily mean that it must be fastenerless. It just means that, well, it'll work without a fastener. That doesn't mean that it must be fastenerless. I believe that the fair reading of those in context does mean that they have to be fastenerless, but the specification continues in column five. In column five, there's a description of these figures 7A, B, C, and D. Two of them are the prior art that have a fastener all the way through from the rail through into the picket, and two of them are the invention where they have the boss on the inside. They describe the fastener of the prior art as described in the specification and then describe the invention as in stark contrast. I think when you put those disclosures together, it's clear that the court's construction that bosses are both integral and fastenerless is correct. If I don't agree with you on fastenerless, but I do agree with you on integral, if that's the way it works, so that takes care of maybe three patents, right? 965, 332, and 164, but what about 905? 905 uses the term projection, and as I just pointed out, a couple of things there. Yeah, but what you pointed out was what made me want to draw you to the 905 because at column one, it says can include small projections, e.g. bosses, which means for example bosses. That would suggest that projections are more than just bosses. They are capable of including other things. I.e. would be one and the same, right? But e.g. is like for an example, bosses. Like fasteners, for example, screws. There's other kinds of fasteners. So why ought we to import an integral limitation into the word projections under those circumstances? There's two reasons. I was going to make the point, and it goes here, but it goes to the discussion of integral as well. A significant part of Barrett's argument here is pointing to things that the district court never saw or heard, and I think that's... What do you mean? Well, for example, you heard Mr. Marindola say that the disclaimer wasn't what it appears to be because the examiner didn't accept it, and then he pointed to... Okay, so none of that is... First off, prosecution history is awful. Disclaimer, all legal questions. That means I get to... And this all was part of the records, part of the prosecution history. So it doesn't honestly matter to me whether he argued that precisely to the district court because I review it de novo, and I have to look at all that stuff. So just could you focus on my question, though, which is why in light of the specification which says projections, which I understand to mean projections are more than just bosses in the same way fasteners are more than just screws. Right. That is correct. Projections, e.g. bosses, means that projections are more than bosses. We agree on that. The reason that the limitations did still be there because the entire... Well, first off, projections mean they project from something, right? You have a connector strip. The description of how the connector strips are made shows that... Yeah, but a screw projects out of a board. Right. That doesn't mean it's integral. That's true. A screw is not necessarily integral. And this is one of those arguments that was not made below. When we put these issues before the court, Barrett did not respond by arguing any difference. In fact, they argued that projections, bosses, nubs, all those things were the same in terms of the briefing and the argument below. So are you arguing with respect to projection that the same disclaimer that we're talking about for bosses would apply to projections? We are. And why? Given the example and the e.g. and all that that Chief Judge Moore talked you through, why do you say that it should apply? Because the specification and the prosecution doesn't actually make a difference between a projection and a boss. The language does. I mean, there's no debate about how the language reads. We just talked about how the specification made a difference between bosses and projections. We talked about the e.g. versus i.e. Well, I didn't, but the Chief talked to you about those. Yeah. Throughout the actual description of the invention and in the prosecution that we talked about, including, for example, the distinction over culture where the actual disclaimer is made, the claimed integral boss, they don't make any argument that projections are different. When they got to adding projections to the claims, they don't argue that it's in any sense different, even though that language is there with the e.g. bosses. And I would add, I mean, that's basically in the context of what they're talking about here in terms of how this is manufactured, quick and easy to assemble, and adding, like, a screw as a projection wouldn't... So they're arguing to us on appeal that projections are different. Right. But you're saying they did not argue it before. They did not. And I believe we cited to the PowerPoint they gave and the Markman, among other things, where they basically conceded they were the same. Where is that PowerPoint? Is it in the appendix? It's in the appendix. While he's looking at that appendix, I'd like to briefly touch on our cross-appeal. Sure, go ahead. We cross-appealed on two issues, both indefiniteness. Those issues are the language of the claims that the pivoting of the picket causes the connector strip to slide, and what we refer to as the slidably engaged terms. On the causes terms, I think it's very straightforward. The way the invention is described as working, this is in the specification. It's in the prosecution history. I think it's really undisputable. It's that there's a picket that has an opening around it, and the picket can be pivoted, moved an angle from vertical a certain degree before it hits the edge of the picket opening. And in that movement from vertical to the edge of the picket opening, there's no physical effect or physics lever effect that would cause the connector to slide. So in that initial range of angles, the pivoting of the picket does not cause the connector to slide. Then at some point, depending on the size of the picket, the size of the opening, and the angle that is attempted to be made, then a force is applied to the connector strip. I'm just describing the specification and the disclosure of the invention. A force is applied to the connector strip, and then it starts to slide. That leaves unclear when we're looking... This is a functional term in an apparatus claim. That leaves unclear when we're looking at a physical product, our accused product, which, depending on the size of the picket, the size of the opening, the desired final angle, whether there's even any change in angle at all, whether there's ever a force applied to that which is called a connector strip in our product, such that there might be a cause that the connector strip would slide. And because all of those things are unclear and not specified in the claim, we think that claim is indefinite. The causes terms are indefinite. Likewise, slidably engaged is a functional term for an apparatus claim. And in order for two things to be slidably engaged with each other, there is testimony, and it's not significantly disputed, that you need to know the surface roughness, whether there's lubricant, whether there's an adhesive, what the force applied is, the area of surface contact, things like that, none of which is in the specification. And basically, as a member of the public, we're entitled to know what it takes to avoid infringing this patent. There's no dispute that if we want to make sure something slides, that's easy, you make the surfaces smooth, you make the area of contact small, things like that. The point for definiteness is not what is the center point or the sweet spot of the claim, but what is the edges so that we can find our way outside the scope of the claim. And there's nothing in specification that provides guidance that would help us to avoid a situation where something is slightly engaged when that's something that we want to avoid. And do you have a slide? The PowerPoint dealing with this argument that the difference between projection and BOSS was not made by Barrett Below. There's appendix 2129 through 2137. Also, in their briefs, they don't make a distinction in their argument. 2139. 2129. 2129 to 2137. I am, in my rebuttal time, obviously happy to address this. Well, you can't address this in rebuttal. That's not how your rebuttal works. I'm happy to address it now is what I meant to say, but I notice that I'm... I guess I'm saying if you have questions, I'm happy to address them. Our point is... So you basically think they waived it. I'm trying to figure out, because I'll tell you, I don't think that projection and BOSS should be construed as identical, but I certainly see your point that those were the representations they made. They didn't just make it, by the way, here. They also made it in the argument on the Boston hearing. So I don't know what to do with that. Do I deem it waived on appeal? Because, I mean, claim construction is a question of law. Right. You can't stipulate to a question of law. You can only stipulate to fact questions. So I don't know what to do with that. I've got to make a determination as a matter of law. Does it matter that they argued the wrong thing? I think it has to. That, to me, gets back a little bit to this argument about the prosecution history that they didn't submit to the exam. At some point, district judges have a hard job, and if they can be reversed for something they never saw or never dealt with, that just seems to make it worse, and that would be part of the reason why we would say waiver, even though it's an issue for more. Okay. Thank you, Your Honor. I have a few points to make. The first on fastener lists. Just very briefly, the specification is pretty clear here that the fastener lists two things. One, always describing an embodiment, and two, the contrast is to prior art that fastens the rail directly to the picket, not the connector strip to the picket. Am I correct that even if you convince us on the fastener list and you don't convince us on the integral that you lose? So true on, I guess, everything except for the 905 patent. There's still the issue of projection and series of axles. On that point, I want to... I actually thought it was... Was there any place where you explained to the district court that you wanted a different sort of meaning for projection versus loss? So, no. What the... Below we said was all of these terms should get their ordinary meaning. We explained in our blue brief why... Or, sorry, the yellow brief, why we don't think the statements that were made below were equivalent to saying the plain and ordinary meaning is exactly the same. And I wanted to point out in my rebuttal time that Fortress actually agrees. In their red brief at page 35, they have a heading that is pins are not bosses. They agreed, or at least are arguing here, that projection and series of axles is a distinct thing in the specification from a boss. And so I don't see how we go back... how they go back on that now and say, well, I take it all back. With respect to the 905, it's exactly the same. It seems to me that the arguments below were not saying that the plain and ordinary meaning are exactly the same on all of these. To touch just briefly on the... But the parties lumped them all together. I mean, that's what 2129 and 2130 are doing, right? That's your PowerPoint? So, there were, I mean, there were 33 terms, I think, discussed at the Markman. So a lot of them were lumped together. The district court, though... No, but you kept calling them the seven boss terms, the seven boss terms, the seven boss terms. And one of those boss terms was projector. So it's not the district court's projections. It's not the district court that lumped it together. It seems like, you know, you both lumped it together. No, that's right. And I think the district court recognized that there was a separate issue. She had a separate heading in her opinion that talked about series of axles and found that the disclaimer for bosses applied to series of axles. But what about projections? She does, I think, describe those terms as used the same in the claims. And that's a conclusion that we take issue with. And these are your slides? Your slide slides? Those were Barrett's slides, yes. And you're... I apologize, Your Honor. You're talking about what starts at Appendix 2103. 2129. That's the slides we're talking about. 2129, 2130. Yes. If I could just briefly touch on the contingent cross-appeal, I suppose. Well, it's probably appropriate to call it since the court only needs to review it. If it finds at least one of the claims go our way. I don't think I've ever had or seen an indefinite in this case where, at least with respect to the causes terms, the parties agree on exactly how the invention works. That there's a pivot hole or a picket hole. The picket goes in the hole. And then as you lever the picket one way or the other, it contacts the edge of the hole and moves the connector strip from one side to the other. That's an ordinary meaning of the word cause. It's an easily understandable meaning of the word cause from the specification. District courts have construed this term before in these patents and understood it exactly that way. I don't understand... Their argument was premised on cause having a very specific and somewhat idiosyncratic meaning of a one-to-one relationship between input and outcome. That is not the meaning that is, one, ordinary, even in isolation, but two, not the meaning that the patents give to the term. On the slidable terms, I think the easiest case... Okay, we're way past our time, so I'm going to have to call it. So I'll give you... How much rebuttal time does he have? How much rebuttal time does this one have? Capelli? Okay, you've got a minute and 38 seconds limited to the cross-appeal. Thank you, Your Honor. I think I can do it in less than a minute and 38. Claim 1 of the 965 raises this issue about causes, and part of the issue is that the claim concludes with, in such a manner, that's pivoting causes, in such a manner that the pivotal range of the plurality of pickets relative to the pivotal range is at least about 20 degrees in each direction. That 20 degrees is a requirement of the claim. It starts from the vertical and moves either direction. And everybody knows that does not happen until you hit the edge. So this claim does not describe the invention, and we can't figure out what it means that we're trying to apply it to our product. That's why the causes terms are indefinite. Okay, I thank both counsel, but the case is taken under submission.